# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.                                    Case No. 24-00177-09-CR-W-DGK

MARK A. COTTMAN, (09),
a/k/a "One Shot,"

                    Defendant.

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through Assistant United States Attorney Bradley K. Kavanaugh, respectfully recommends the imposition of a total sentence of ninety-six (96) months' imprisonment, to be followed by a five (5) year term of supervised release.[1] Additionally, the Government requests that the Court order immediate payment of the $300 mandatory special assessment.

## A.    *Plea Agreement*

On November 4, 2025, Mark A. Cottman pled guilty, pursuant to a written plea agreement, to assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(3) and 2 (Count Three), the lesser-included offense of possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (Count Four), and assault

---

[1]The Government recommends that the sentence be imposed as follows: Count Three, assault with a dangerous weapon in aid of racketeering, thirty-three (36) months' imprisonment, followed by a three (3) year term of supervised release; Count Four, possession of a firearm during and in relation to a crime of violence, sixty (60) months' imprisonment, followed by a five (5) year term of supervised release; and Count Five, assault resulting in serious bodily injury in aid of racketeering, thirty-three (36) months' imprisonment, followed by a three (3) year term of supervised release. Count Four is to be served *consecutively* as required by statute, to both Counts Three and Five. The terms of supervised release would be served concurrently.

resulting in serious bodily injury in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(3) and 2 (Count Five). (Doc. 272, 273.)

**B.** *Sentencing Guidelines Calculations*

A Presentence Investigation Report (PSR) was filed on April 13, 2026. (Doc. 359.)[2] The PSR calculated a total offense level of 28 and criminal history category I. (¶¶ 209, 224-25.) According to the United States Sentencing Guidelines (U.S.S.G.), this resulted in an advisory guideline range of imprisonment of 78 to 97 months, plus 60 months consecutive for Count Four of the Indictment. (¶ 264.)

The base offense level applied in the PSR was higher than that contemplated by the parties in the written plea agreement.

**C.** *Application of §2A2.1 versus §2A2.2*

The applicable Guidelines section for violent crimes in aid of racketeering is U.S.S.G. § 2E1.3. According to § 2E1.3(a)(2), the base offense level to be used is the offense level applicable to the underlying crime or racketeering activity. The PSR determined that in this instance, the underlying offense was assault with intent to commit murder or attempted murder, § 2A2.1. (¶ 188.) This resulted in a base offense level of 27 under the Guidelines. *Id.*

Attempting or conspiring to commit murder in aid of racketeering is in violation of 18 U.S.C. § 1959(a)(5). Cottman was not charged with, nor did he plead guilty to this offense. Rather, Cottman was charged with and pled guilty to assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(3) and 2.

Under the United States Sentencing Guidelines, aggravated assault is defined as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not

---

[2]All references are to the PSR unless otherwise noted.

2

merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony." § 2A2.2 cmt. n. 1. "Thus, § 2A2.2 applies to defendants who commit a felonious assault involving any one of the four enumerated scenarios." *United States v. Gaddy,* 656 Fed.Appx. 628, 630 (4th Cir. 2016); <u>See</u> *United States v. Rue,* 988 F.2d 94, 96 (10th Cir. 1993) (holding that "[t]he plain language of this definition of [aggravated assault] requires §2A2.2 be applied if any of the … described situations exists"). Analogous to the offense of assault with a dangerous weapon in aid of racketeering is the crime of assault with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. § 113(a)(3). The applicable Guidelines section for 18 U.S.C. § 113(a)(3) is § 2A2.2. U.S.S.G. Appendix A (Statutory Index).

The Government believes that the applicable Guidelines section for assault with a dangerous weapon in aid of racketeering is aggravated assault, under U.S.S.G. § 2A2.2(a) and § 2E1.3(a)(2), which provides for a base offense level of 14. The Government believes that a 7-level enhancement is applicable because the victim sustained permanent or life-threatening bodily injury, pursuant to § 2A2.2(b)(3)(C). After applying a 3-level reduction for acceptance, this results in a total offense level of 18. Since Cottman has zero (0) criminal history points and is a criminal history category I, this results in an advisory guideline range of 27 to 33 months' imprisonment, plus 60 months consecutive for Count Four of the Indictment, that is possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.

**D.** ***Sentencing Factors Under 18 U.S.C. § 3553(a)***

Under federal law, in determining an appropriate sentence, the Court shall consider, amongst other factors, the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a)(1). The Court shall further consider the

3

need for the sentence imposed to: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)-(D).

On September 17, 2022, Cottman and twelve other members of the Pagan's and their support club, the Los Valerosos, chased down a lone rival gang member on a motorcycle, forcing him off the road in Blue Springs, Missouri.[3] Thereafter, Cottman and his group confronted the lone rival gang member on the side of the roadway while armed with firearms and at least one axe handle. As he was being confronted, the victim (hereinafter, "V3") told his assailants, "We ain't gotta do this. You stay in your lane, I'll stay in my lane." In reply, the Pagan's Kansas City Chapter President said "Yes, we do" and then someone shot the victim twice. Ultimately, V3 would be shot seven times, with wounds to his knee, thigh, forearm, biceps, buttocks and back of his leg. During the gun fire, Cottman suffered a gunshot wound to his upper left thigh. While at the hospital, Cottman refused to answer questions about what had happened.

Following a search of Cottman's motorcycle, law enforcement recovered two packets of "vent chest seal," which is used to stop bleeding from gunshot wounds, and a Ruger .380 caliber semi-automatic pistol. Law enforcement would later contact the registered owner of the pistol, who reported that the firearm had previously been stolen; though the reporting party could not produce a police report or identify what agency it had been reported to.

At the time of the shooting, Cottman was a Pagan's prospect.

---

[3]The nature and circumstances of the offense is summarized from the undisputed facts in the PSR without further citation.

Approximately three weeks later, while at a Pagan's State Party in Sulphur Springs, Texas, Cottman and several others were awarded "Taking Care of Business" ("TCB") patches for their role in the Bandidos shooting incident. Cottman also received his Pagan's patch, becoming a fully patched member of the Pagan's.

On July 20, 2023, Cottman and two other members of the Pagan's ambushed and assaulted a member of a rival motorcycle gang. Cottman and his co-defendants stomped, kicked and punched the victim (hereinafter, "V9") as he lay on the ground. V9 was hospitalized after suffering a head contusion (bruise on the brain), rib fracture, hemothorax (accumulation of blood in the area between the chest wall and lungs), a left pulmonary contusion (bruising of the lung), pneumothorax (collapsed lung) and a traumatic brain injury.

The assault was ordered at the National level of the Pagan's. The purpose was to stop a rival gang from establishing a chapter in the Kansas City area. V9 was lured to a local bar under the false pretense that the Pagan's wanted to try and establish an amicable relationship where both clubs existed in Kansas City. After arriving at the bar, V9, who was alone, was jumped and beaten by Cottman and his co-defendants. Afterward, Cottman and his co-defendants fled the bar before law enforcement could arrive. The following day, a National-level member of the Pagan's, using the encrypted messaging service Signal, sent a message that "[the Pagan's National President] is very appreciative of the work done…he's shock [*sic*] at our no procrastination policy lol."

V9, who was a carpenter, was unable to work for five weeks due to his injuries. When he was able to return, he was laid off from his job. His employer had determined that he could not fulfill his job duties and that he presented a risk of re-injury while on the job. It would be two more weeks before V9 would find employment. The victim ultimately filed for bankruptcy.

Over the course of the investigation, law enforcement searched Cottman's residence on two occasions. The first was May 11, 2023, and the second was following indictment and his arrest on August 15, 2024. On May 11th, officers found Pagan's clothing/paraphernalia, a Mossberg, 12-gauge shotgun, and a Smith & Wesson, M&P 45 Shield pistol. Both firearms were found inside of a black motorcycle. On August 15th, officers found more Pagan's clothing/paraphernalia, a PAS Arms Co. 12-gauge shotgun, a Ruger GP 100, .357 caliber revolver, a Ruger 1911, .45 caliber pistol, a Sig Sauer P320 pistol, a Ruger AR 5.56mm caliber rifle, ammunition, and body armor.

Cottman has been found guilty of twelve (12) prior misdemeanor and/or ordinance offenses, and one violation of the Uniform Code of Military Justice. (¶¶ 212-223.) Among the offenses: possession of LSD, possession of drugs, possession of a controlled substance and drug paraphernalia, disorderly conduct, and obstructing official business.

When considering the factors under 18 U.S.C. § 3553(a), including but not limited to, the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, the need to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public, a total sentence of ninety-six (96) months' imprisonment is appropriate.

**E.**     ***Restitution and Mandatory Special Assessment***

There were two identifiable victims, for purposes of Cottman's counts of conviction. Those victims are identified in the PSR as V3 and V9.

To date, V3 has not sought restitution.

V9 was out of work for seven weeks and sustained $12,140.80 in lost wages. In addition, V9 lost $343 from a vacation fund that he contributed to through his employer. V9 lost

consciousness trying to drive home after the assault, and he struck a neighbor's mailbox. The cost to repair the mailbox was $60, and the repair to his vehicle was $450. V9 was hospitalized due to his injuries, and he incurred $7,840.43 in medical bills. Accordingly, the Government is requesting that Cottman be ordered to pay V9 $20,834.23 in restitution.

The Government requests that the Court order immediate payment of the $300 mandatory special assessment.

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court impose a total sentence of ninety-six (96) months' imprisonment, to be followed by a five (5) year term of supervised release, an order of restitution to V9 in the amount of $20,834.23, and the immediate payment of the $300 mandatory special assessment.

Respectfully submitted,

R. Matthew Price
United States Attorney

By  /s/Bradley K. Kavanaugh

Bradley K. Kavanaugh
Assistant United States Attorney
Violent Crime & Drug Trafficking Unit
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on May 14, 2026, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

/s/Bradley K. Kavanaugh
Bradley K. Kavanaugh
Assistant United States Attorney